# 25-10690

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

**UNITED STATES OF AMERICA,**
Plaintiff-Appellee

v.

**JAMIE HACKNEY,**
Defendant-Appellant

On Appeal from the United States District Court
For the Northern District of Texas
Fort Worth Division
District Court No. 4:24-CR-17-O

**APPELLEE'S BRIEF**

Nancy E. Larson
Acting United States Attorney

Gail Hayworth
Assistant United States Attorney
Texas Bar No. 24074382
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: (214) 659-8600
gail.hayworth@usdoj.gov

Attorneys for Appellee

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary. Hackney challenges two conditions of his supervised release, but his appeal is barred by the appellate waiver in his plea agreement. Moreover, even if this Court reaches the merits of his appeal, the appeal is readily resolved based on the short record, this Court's caselaw, and the deference this Court gives to the district court under the plain-error standard of review. Accordingly, oral argument is unlikely to aid the Court in resolving this appeal.

i

# TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT ..................................... i

TABLE OF AUTHORITIES .................................................................... iv

STATEMENT OF JURISDICTION ........................................................ 1

STATEMENT OF THE ISSUES ............................................................. 1

STATEMENT OF THE CASE ................................................................ 2

    1.    Hackney is arrested after he produces child pornography using the sleeping five-year-old daughter of his then girlfriend and later uploads the images to his Google Drive. ..................................... 2

    2.    Under a plea agreement with an appeal waiver, Hackney pleads guilty to one count of production and one count of transportation of child pornography, and the district court imposes a 600-month sentence. ................................................................................. 6

SUMMARY OF THE ARGUMENT ......................................................... 8

ARGUMENT AND AUTHORITIES ....................................................... 11

    1.    Hackney waived his right to bring this appeal ............................ 11

        A.    "Statutory maximum," in the context of supervised release, refers to the longest supervised-release term authorized by statute. ....................................................................... 13

        B.    Hackney's contention that "statutory maximum" means the requirements set out in Section 3583(d) fails. .................... 19

    2.    Even assuming Hackney did not waive his right to bring this appeal and this Court reaches the merits of his argument, Hackney fails to show that the district court plainly erred by imposing the complained-of conditions. ...................................................... 25

**Page**

A.  The district court did not plainly abuse its discretion by imposing a condition providing that Hackney shall have no contact with minors. ...................................................... 27

B.  The district court did not plainly abuse its discretion by imposing a condition requiring Hackney to provide the probation officer with access to his financial information.. 33

C.  In any event, Hackney fails to satisfy the fourth prong. ...... 36

CONCLUSION.................................................................................... 118

CERTIFICATE OF COMPLIANCE ....................................................... 38

# TABLE OF AUTHORITIES

**Federal Cases**                                                            **Page(s)**

*Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375 (5th Cir. 2008) ................... 24

*Puckett v. United States*, 556 U.S. 129 (2009) ................................................. 26

*United States v. Andis*, 333 F.3d 886 (8th Cir. 2002) ...................................18, 23

*United States v. Aquino*, 2024 WL 5155129 (11th Cir. Dec. 18, 2024).............. 17

*United States v. Ballard*, 491 F. App'x 374 (4th Cir. 2012) ............................... 18

*United States v. Barnes*, 953 F.3d 383 (5th Cir. 2020)...................................... 19

*United States v. Bond*, 414 F.3d 542 (5th Cir. 2005)......................................... 14

*United States v. Cortez*, 413 F.3d 502 (5th Cir. 2005) ....................................... 14

*United States v. Cox*, 672 F. App'x 517 (5th Cir. 2017) ..............................34, 35

*United States v. Duke*, 788 F.3d 392 (5th Cir. 2015)...................................30, 31

*United States v. Ellis*, 720 F.3d 220 (5th Cir. 2013)........................10, 25, 26, 29

*United States v. Ferguson*, 669 F.3d 756 (6th Cir. 2012)..............................16, 17

*United States v. Graves*, 908 F.3d 137 (5th Cir. 2018)...................................... 12

*United States v. Hartshorn*, 163 F. App'x 325 (5th Cir. 2006).......................... 25

*United States v. Higgins*, 739 F.3d 733 (5th Cir. 2014) ......................... 12, 21, 22

*United States v. Holzer*, 32 F.4th 875 (10th Cir. 2022)......................... 14, 17, 21

*United States v. Jacobs*, 635 F.3d 778 (5th Cir. 2011) ...................................... 20

*United States v. Kelly*, 915 F.3d 344 (5th Cir. 2019)......................................... 13

*United States v. Magana*, 837 F.3d 457 (5th Cir. 2016) .................................... 32

*United States v. Mendoza-Velasquez*, 847 F.3d 209 (5th Cir. 2017) ................... 26

*United States v. Minano*, 872 F.3d 636 (5th Cir. 2017)................................11, 12

**Federal Cases, continued**                                                 **Page(s)**

*United States v. Ortiz*, 784 F. App'x 285 (5th Cir. 2019)................................. 25

*United States v. Paul*, 274 F.3d 155 (5th Cir. 2001).......................................... 26

*United States v. Prestel*, 60 F.4th 616 (10th Cir. 2023) ......................... 14, 16, 19

*United States v. Prieto*, 801 F.3d 547 (5th Cir. 2015)...................................36, 37

*United States v. Ramirez*, 575 F. App'x 398, 2014 WL 3469487
     (5th Cir. July 16, 2014)..............................................................20, 31

*United States v. Rubbo*, 396 F.3d 1330 (11th Cir. 2005) ................................... 14

*United States v. Scallon*, 683 F.3d 680 (5th Cir. 2012).......................... 17, 21, 24

*United States v. Sines*, 303 F.3d 793 (7th Cir. 2002)......................................... 18

*United States v. Vega*, 2014 WL 10937081 (5th Cir. Sept. 15, 2014) ................ 35

*United States v. West*, 137 F.4th 395 (5th Cir. 2025)........................................ 15

*United States v. Yiping Qu*, 618 F. App'x 777 (5th Cir. 2015) ................... passim

**Federal Statutes and Rules** **Page(s)**

18 U.S.C. § 2251 ............................................................................... 16

18 U.S.C. § 2252A ............................................................................. 16

18 U.S.C. § 3553(a)(1) ...................................................................... 27

18 U.S.C. § 3553(a)(2)(B)–(D) ........................................................ 27

18 U.S.C. § 3583 ............................................................................... 16

18 U.S.C. § 3583(d)(1) ................................................................26, 34

18 U.S.C. § 3583(d)(2) ................................................................27, 28

18 U.S.C. § 3583(d)(3) ...................................................................... 27

18 U.S.C. § 3583(e) ........................................................................... 36

18 U.S.C. § 3583(e)(2) ...................................................................... 33

Fed. R. App. P. 4(b) ............................................................................ 1

**Federal Sentencing Guidelines**

USSG § 5D1.3(d) ............................................................................... 33

USSG § 5D1.3(d)(3) ........................................................................... 33

## STATEMENT OF JURISDICTION

This is a direct appeal from a sentence in a criminal case. The district court had jurisdiction under 18 U.S.C. § 3231, and this Court has jurisdiction under 18 U.S.C. § 3742(a). The district court entered judgment on June 2, 2025, and Hackney timely filed the notice of appeal the same day. Fed. R. App. P. 4(b). (ROA.7.)

## STATEMENT OF THE ISSUES

1.     Is this appeal—where Hackney challenges the substantive reasonableness of two supervised-release conditions under 18 U.S.C. § 3583(d)—barred by the appellate-waiver provision in Hackney's plea agreement?

2.     Assuming Hackney did not waive his right to bring this appeal, did the district court plainly and reversibly err? Specifically,

    A.     Did the district court clearly or obviously abuse its wide discretion under Section 3583(d)(2) by concluding that a 15-year supervised-release condition prohibiting Hackney from having "contact with minors under the age of 18, including by correspondence, telephone, internet, electronic communication, or communication through third parties" involved no greater deprivation of liberty than reasonably necessary to satisfy the Section 3553(a) sentencing objectives of deterrence and protecting the public?

1

B.     Did the district court clearly or obviously abuse its wide discretion under Section 3583(d)(1) and (d)(3) by concluding that a supervised-release condition requiring Hackney to "provide to the probation officer complete access to all business and personal financial information" was reasonably related to the Section 3553(a) sentencing objectives and consistent with pertinent policy statements?

<b><u>STATEMENT OF THE CASE</u></b>

**1.     Hackney is arrested after he produces child pornography using the sleeping five-year-old daughter of his then girlfriend and later uploads the images to his Google Drive.**

On October 15, 2024, the Dallas Police Department notified the Fort Worth Police Department of an escalated Cybertip provided by Google, which indicated that a user named "Jamie H" with the phone number ending in 9441, had uploaded three images of child sexual abuse material to his Google Drive.  (ROA.195.)  All three images appeared to be the same photo (IMG_6513.jpg), which depicted a female child under the age of six (MV1) asleep in a bed with a naked male putting his erect penis in the child's hand.  (ROA.195.)  The metadata attached to the photo showed that the image was captured on an Apple iPhone XR on May 27, 2024, at a residence in Fort Worth.  (ROA.195.)  Investigators determined that the residence where the photo was taken and the phone number, date of birth, and address associated

2

with the Google account all linked to the defendant-appellant Jamie Hackney. (ROA.195, 208.)  Investigators also reviewed a previous Cybertip reported by Google, which contained the same username and subscriber information linked to Hackney.  (ROA.195.)  In that prior tip, the user had uploaded 36 files of child sexual abuse material to the user's Google Drive, and one of the images depicted a prepubescent female, lying naked on her back with the lewd and lascivious exhibition of her genitals.  (ROA.195.)

The next day, on October 16, 2024, investigators obtained a state search warrant for Hackney's residence.  (ROA.195.)  During the execution of the warrant, investigators conducted a voluntary interview with Hackney in which Hackney admitted ownership of the email address and telephone number associated with the Google account referenced in the Cybertips.  (ROA.195-96.)  Hackney also admitted to viewing child pornography using his Samsung cellular phone.  (ROA.195.)  When asked how long he had been viewing child pornography, Hackney claimed that he "just fucked up" and "purchased it yesterday" from an unknown site on the dark web using Bitcoin.  (ROA.196.)  Later, however, Hackney admitted that he began watching child pornography after his wife died in 2022.  (ROA.196.)

When investigators asked Hackney if he had ever produced child pornography, Hackney initially said no, but, when presented with the image

from the escalated Cybertip (IMG_6513.jgp), Hackney admitted to producing it.  (ROA.196.)  He identified the child in the image as MV1, the daughter of his former girlfriend, DS.  (ROA.196.)  At the time Hackney took the image, MV1 was five years old.  (ROA.195, 229.)  When asked whether an incident like this ever happened at any other time with any other children, Hackney responded, "I don't know," stating that, when he is high on methamphetamine, "everything is a blur."  (ROA.196.)  Later, Hackney admitted that he took a photo of MV1's sister wearing no clothes and covering her sexual organ.  (ROA.196.)

According to Hackney's mother and mother-in-law (who were also interviewed on October 16, 2024), Hackney and DS had been in a relationship "off and on" for several years, and, during that time, DS and her four minor children (DS2, ES, MV1, and JS)[1] lived in Hackney's residence, along with Hackney and his two minor children (SH and JH).[2]  (ROA.196.)  Although DS and her children moved out of Hackney's house around April or May 2024, as of the search warrant's execution, Hackney still maintained almost daily

---

[1] As of April 10, 2025 (the probation officer's writing of the PSR), DS's children were of the following ages:  DS2, age 17; ES, age 10; MV1, age 8; and JS, age 2.  (ROA.196.)

[2] As of April 10, 2025, Hackney's children were of the following ages:  SH, age 17, and JH, age 7.  (ROA.196.)

4

contact with DS and had recently spent time with her daughter ES. (ROA.196-97.)

After the search warrant's execution, Hackney was arrested, (ROA.196), and an extraction of the Samsung cell phone that Hackney possessed at that time revealed 854 images of child sexual abuse material—the majority of which appeared to be produced from cameras hidden throughout Hackney's house. (ROA.197.) Of the child sexual abuse material produced by Hackney, (1) 55 images depicted MV1, who appeared to be five or six years old at the time, including a series where Hackney digitally penetrated MV1's vagina with his fingers; (2) 104 images depicted Hackney performing multiple sex acts with a prepubescent female (believed to be one of DS's children but unknown whether it was MV1) in the bedroom of his residence; and (3) the remaining images came from cameras hidden throughout Hackney's residence, including cameras hidden in his bathroom, which recorded images depicting Hackney's daughter SH and all of DS's minor female children fully nude in the bathroom. (ROA.197, 204.)

In January 2025, DS's children were forensically interviewed at the Alliance for Children. (ROA.198, 202.) In MV1's interview, when asked whether there were things MV1 did not enjoy doing with Hackney, MV1 said that her mother directed MV1 not to talk about it because her mother really

liked Hackney and if MV1 talked about it then Hackney would go to jail. (ROA.198.) MV1 stated that when she spent the night at Hackney's house, she slept in Hackney's bed with Hackney, her mother, and her sister ES, (ROA.198), and, on one occasion, she saw Hackney do something to ES, but she did not want to talk about it, (ROA.202). MV1 stated that her mother also saw the conduct and used her cell phone to take a picture of it. (ROA.202.) In ES's interview, ES stated that Hackney sometimes did things ES did not like but that she did not want to discuss them. (ROA.202.) In DS2's interview, she stated that, in 2022 (when she was about 14 years old), she was involuntarily drugged after she ate a piece of candy at a Halloween party (which a later hospital visit revealed to be methamphetamine) and that, while she was drugged, Hackney penetrated her vagina with his penis. (ROA.203.) Crying, DS2 said that when she tried to tell people what Hackney had done to her, no one believed her, and everyone "brushed it off." (ROA.203.)

**2.     Under a plea agreement with an appeal waiver, Hackney pleads guilty to one count of production and one count of transportation of child pornography, and the district court imposes a 600-month sentence.**

A federal grand jury returned a two-count indictment charging Hackney with production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e) (Count One), and transportation of child pornography, in violation of 18 U.S.C. § 2252A(a)(1) and (b)(1) (Count Two). (ROA.26-29.)

Pursuant to a plea agreement, Hackney pled guilty to both counts. (ROA.178-89.) As part of the agreement, the government agreed not to bring "any additional charges against the defendant based upon the conduct underlying and related to the defendant's plea of guilty," (ROA.183), and Hackney broadly waived his right to appeal his conviction and sentence, carving out only a few limited exceptions to that waiver, (ROA.184-85).

The presentence report (PSR) determined a total offense level of 42, a criminal-history category of I, and a resulting advisory guideline range of 360 months to life in prison, which, due to the statutory maximum, became a guideline range of 360 to 600 months. (ROA.213.) For the supervised-release term, the PSR noted the statutory maximum (and guidelines recommendation) was a term of life, (ROA.214), and it recommended a number of supervised-release conditions, including ones providing that the defendant shall have "no contact with minors under the age of 18, including by correspondence, telephone, internet, electronic communication, or communication through third parties," and that the defendant shall "provide to the probation officer complete access to all business and personal financial information." (ROA.217-18.)

Hackney filed no objections to these supervised-release conditions or to the PSR's guideline calculations prior to the sentencing hearing, (ROA.220-

21), and, at the hearing, the district court adopted them without objection. (ROA.164, 170.)  After emphasizing that the facts of this case were simply "egregious," the district court imposed a 360-month sentence on Count One and a 240-month sentence on Count Two, to run consecutively, for a total of 600 months in prison, followed by a 15-year term of supervised release. (ROA.69, 171.)

## SUMMARY OF THE ARGUMENT

1.      As an initial matter, this Court should dismiss Hackney's appeal as barred by the appellate waiver in his plea agreement.  Despite broadly waiving his right to appeal his sentence in that agreement, Hackney now seeks to appeal two supervised-release conditions, contending that his appeal falls within one of the waiver's limited exceptions in which Hackney reserved the right to appeal "a sentence exceeding the statutory maximum punishment." But applying the ordinary meaning of the phrase, as well as other language in the parties' plea agreement, it is clear that the phrase "statutory maximum," in the context of supervised release, refers to the longest supervised-release term authorized by statute.  Because Hackney's 15-year supervised-release term does not exceed the statutory maximum of life, his appeal does not fall within the statutory-maximum exception.

Hackney contends otherwise, arguing that "statutory maximum" means the limits set by 18 U.S.C. § 3583(d), such that his contention that two

supervised-release conditions exceed those limits falls within the statutory-maximum exception. But Hackney conflates two distinct concepts. A sentence that exceeds the limits of the law is not necessarily the same as a sentence that exceeds the statutory-maximum punishment. Indeed, Hackney's contention that the complained-of supervised-release conditions exceed the limits of Section 3583(d) (e.g., that they constitute a greater deprivation of liberty than reasonably necessary to further the sentencing goals of deterrence and protection of the public) is analogous to a contention that a prison sentence exceeds the limits of 18 U.S.C. § 3553(a) (e.g., that the sentence is greater than necessary to further the sentencing goals of deterrence and protection of the public). And just as an appeal contending that a prison sentence is substantively unreasonable under Section 3553(a) does not fall within the statutory-maximum exception, Hackney's contention that the supervised-release conditions are substantively unreasonable under Section 3583(d) likewise does not fall within the statutory-maximum exception.

2.    In any event, even if this Court reaches the merits of Hackney's appeal, Hackney fails to show that the district court abused its wide discretion by imposing the complained-of conditions.

A.    Under this Court's precedent and based on the record, the district court did not abuse its discretion—let alone clearly or obviously abuse its

9

discretion—by imposing a condition providing that Hackney shall "have no contact with minors under the age of 18, including by correspondence, telephone, internet, electronic communication, or communication through third parties." In *United States v. Ellis*, 720 F.3d 220 (5th Cir. 2013), this Court affirmed a similarly phrased condition, which notably made no allowance for the prohibited contact upon the probation officer's approval. Thus, following *Ellis*, the district court here did not err—let alone plainly err—by imposing the condition. Indeed, this is especially true considering that the condition here is even more limited than the one affirmed in *Ellis*: The condition affirmed in *Ellis* extended for the life of the defendant, whereas the condition here extends for only 15 years. The condition here is also arguably even more supported by the record than the one in *Ellis*, as Hackney poses an even greater danger to children than the defendant did in *Ellis* given that Hackney was (1) convicted of production of child pornography, not possession (as in *Ellis*); (2) appears to have sexually abused children more recently than the defendant in *Ellis*; and (3) sexually abused children of a wider swath of ages (from a five-year-old to teenagers). Moreover, considering Hackney's (1) history of inducing and/or manipulating a mother and her young children to protect him by staying silent about his abuse, and (2) history of violating and abusing children while they were sleeping, drugged, or otherwise unaware of the violation, Hackney poses

10

a particularly difficult monitoring challenge. Thus, there is good reason to believe that allowing him to engage in the prohibited contact (i.e., regular, non-incidental contact with minors) upon the probation officer's approval would not sufficiently protect children from his future potential abuse. In short, the district court did not err—let alone plainly err—by imposing the complained-of condition.

B.    The district court did not abuse its discretion—let alone clearly or obviously abuse its discretion—by imposing a supervised-release condition requiring Hackney to provide the probation officer with access to his financial information. This Court has affirmed a similar condition where, as here, the district court ordered the defendant to contribute to the costs of his court-ordered treatment services. As such, Hackney fails to show that the district court erred, let alone clearly or obviously erred, in finding that the condition is consistent with pertinent policy statements and reasonably related to the sentencing goals of Section 3553(a).

## ARGUMENT AND AUTHORITIES

### 1.    Hackney waived his right to bring this appeal.

When reviewing whether an appeal waiver bars an appeal, this Court conducts a two-step inquiry. *United States v. Minano*, 872 F.3d 636, 636 (5th Cir. 2017). First, it considers whether the waiver was knowing and voluntary. *Id.* Second, it determines "whether the waiver applies to the circumstances at

11

hand, based on the plain language of the agreement." *Id.* (internal quotation marks omitted).

Here, Hackney does not dispute that the waiver provision in his plea agreement was knowing and voluntary. (Brief at 10 (acknowledging that he "waived his right to appeal").)[3] As such, this Court should "skip straight to step two—whether the waiver bars the present appeal." *United States v. Graves*, 908 F.3d 137, 139 (5th Cir. 2018).

Regarding that step, Hackney does not dispute that the plain language of the plea agreement waived his right to appeal the "sentence," (ROA.184-85), a term that "unambiguously includes [supervised release] and its conditions as a matter of law." *United States v. Higgins*, 739 F.3d 733, 738 (5th Cir. 2014). Therefore, whether Hackney's appeal is barred by the waiver turns on whether it falls within a listed exception to the waiver. Because none of the other exceptions even arguably apply,[4] Hackney relies on the statutory-maximum exception, contending that he is bringing "a direct appeal of a sentence exceeding the statutory maximum punishment." (Brief at 11.) But he is

---

[3] Nor could he, as Hackney testified at rearraignment that he read and understood the plea agreement, including the appeal-waiver provision, before he signed it, and that he knowingly and voluntarily waived his right to appeal as set out in the plea agreement. (ROA.120-27.)

[4] Hackney makes no contention that the district court committed an "arithmetic error" at sentencing, which is "an error involving a mathematical calculation." *Minano*, 872 F.3d at 636. Nor does he bring a claim of ineffective assistance of counsel or challenge the voluntariness of his guilty plea or the appeal waiver.

wrong. His appeal does not fall within the statutory-maximum exception; consequently, this Court should dismiss it as barred by the plea agreement's waiver provision.

### A.    "Statutory maximum," in the context of supervised release, refers to the longest supervised-release term authorized by statute.

This Court applies "normal principles of contract interpretation when construing plea agreements." *United States v. Kelly*, 915 F.3d 344, 348 (5th Cir. 2019). When determining whether an appeal waiver applies to the issues presented, this Court "ascertains the ordinary meaning of the waiver provision," and although it "construes appeal waivers narrowly . . . against the government," it also recognizes that "the government has a strong and legitimate interest in both the finality of convictions and in the enforcement of plea bargains." *Id.* at 348-49.

Here, in the context of supervised release, the most natural and ordinary meaning of "statutory maximum" is the longest term of supervised release authorized by statute. Indeed, as this Court has noted, it seems "obvious" that the phrase "'statutory maximum' generally denotes a period of time." *United States v. Yiping Qu*, 618 F. App'x 777, 779 (5th Cir. 2015). "'Maximum,' or its counterpart 'minimum,' generally refers to something that can be quantified."

13

*See id*. at 780; *see also United States v. Prestel*, 60 F.4th 616, 619-20 (10th Cir. 2023) (emphasizing that "maximum" is "an expression of quantity").[5]

This ordinary understanding of "maximum" as denoting a period of time in the supervised-release context is consistent with how the term is used in other contexts. For example, in the context of prison sentences, the phrase "statutory maximum" generally denotes a period of time—referring to the "upper limit of punishment that Congress has legislatively specified for a violation of a statute." *United States v. Bond*, 414 F.3d 542, 543, 545 (5th Cir. 2005). So, for example, the "statutory maximum" would be ten years for a violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8) (2005), ten years for a violation of 18 U.S.C. § 666(a), and five years for a violation of 18 U.S.C. § 371. *See Bond*, 414 F.3d at 546; *United States v. Cortez*, 413 F.3d 502, 503 (5th Cir. 2005); *United States v. Rubbo*, 396 F.3d 1330, 1334-35 (11th Cir. 2005) (holding that

---

[5] *See United States v. Holzer*, 32 F.4th 875, 883-84 (10th Cir. 2022) (citing the Oxford English Dictionary's definition of "maximum" as "the highest possible magnitude or quantity of something," where "magnitude" means "size, absolute value, and a quantity, an amount"); *see also Maximum*, Merriam-Webster Online, https://www.merriam-webster.com/dictionary/maximum (last visited October 15, 2025) (defining "maximum" as "the greatest *quantity or value* attainable or attained") (emphasis added); Cambridge Dictionary Online, https://dictionary.cambridge.org/us/dictionary/english/maximum (last visited October 15, 2025) (defining "maximum" as "being the largest *amount or number* allowed or possible") (emphasis added); Dictionary.com, https://www.dictionary.com/browse/maximum (last visited October 15, 2025) (defining "maximum" as "the greatest *quantity or amount* possible, assignable, allowable, etc.") (emphasis added).

14

"statutory maximum" refers to "the *longest* sentence that the statute which punishes a crime permits a court to impose") (emphasis added).[6]

Further, this ordinary understanding of "maximum" as referring to something quantifiable like time is also consistent with how the parties used the word "maximum" in other parts of the plea agreement. Specifically, in paragraph three—the penalties section of the plea agreement—the parties stated that, with respect to supervised release, the "maximum" penalty the district court could impose on each count was "a term of supervised release of at least five years up to any term of years to life." (ROA.179-80.) This language demonstrates that, with respect to supervised release, the parties understood that the term "maximum" meant the longest term of supervised release authorized by statute—i.e., life.

In short, the ordinary meaning of "maximum," its meaning in the analogous context of prison sentences, and the entirety of the plea agreement

---

[6] Hackney contends that, in the restitution context, the statutory maximum is stated in non-quantifiable terms and that this Court should extend that reasoning to the supervised-release context to promote consistency and predictability in appellate decisions. (Brief at 14.) However, restitution, which is a dollar-amount of loss, is, by definition, quantifiable. Further, given the "thick cloud of uncertainty" cast over this Court's caselaw regarding the statutory maximum in the restitution context, *see United States v. West*, 137 F.4th 395, 404 (5th Cir. 2025) (Willett, J., concurring) (citing *United States v. West*, No. 22-11001, Order Denying Rehearing En Banc, at 13-15, 19-22 (Oldham, J., dissenting)), consistency and predictability actually counsel *against* extending that line of precedent to the supervised-release context. Rather, to achieve consistency and predictability in appellate decisions, this Court's caselaw regarding the statutory maximum for prison terms provides the better model.

15

all demonstrate that the statutory-maximum exception means that Hackney

can appeal if the district court sentences him beyond the 30-year maximum

prison sentence for Count One, the 20-year maximum prison sentence for

Count Two, or the maximum supervised-release term of life.  *See* 18 U.S.C.

§§ 2251, 2252A; 18 U.S.C. § 3583; *Yiping Qu*, 618 F. App'x at 780.  The district

court did not do that.  (ROA.69.)  And Hackney does not contend otherwise.

Rather, Hackney disputes two supervised-release conditions based on a

standard—i.e., Section 3583(d)'s reasonableness analysis—that is not

quantifiable in nature and therefore cannot constitute a "maximum."  *See*

*Yiping Qu*, 618 F. App'x at 780.[7]  As such, Hackney's appeal does not fall

within the statutory-maximum exception, and it is barred by the appellate

waiver.

Indeed, this Court has found similar appeals to be barred by analogous

waiver provisions.  In *Yiping Qu*, for example, the defendant, like Hackney,

sought to appeal a supervised-release condition, arguing that it violated Section

3583(d)'s requirements, and this Court held that an analogous waiver

---

[7] *See also Prestel*, 60 F.4th at 619-20 (emphasizing that an unquantifiable aspect of punishment, such as the typical condition of supervised release, cannot exceed a statutory *maximum*, which is "an expression of quantity"); *United States v. Ferguson*, 669 F.3d 756, 766 (6th Cir. 2012) (rejecting the defendant's argument that a challenge to a supervised-release condition on the grounds that it effects a greater deprivation of liberty than necessary constitutes an appeal of a sentence exceeding the statutory maximum, as the argument required a "strained construction" of the appellate waiver).

provision with a statutory-maximum exception barred the appeal. *Yiping Qu*, 618 F. App'x at 778-80. Similarly, in *United States v. Scallon*, the defendant sought to challenge his supervised-release conditions on the ground that they violated Section 3583(d)'s requirements, and, based on an analogously worded appeal waiver with a statutory-maximum exception, the Court concluded that the defendant had "unequivocally waived" his right to raise such a challenge. 683 F.3d 680, 681, 684 (5th Cir. 2012).

Other circuit courts have held likewise, concluding that a claim like the one Hackney seeks to raise here—i.e., that the district court abused its discretion under Section 3583(d) by imposing purportedly unreasonable supervised-release conditions—is not an appeal that falls within the statutory-maximum exception to a valid appeal waiver. *See, e.g.*, *United States v. Aquino*, No. 24-10330, 2024 WL 5155129, at *1, 4 (11th Cir. Dec. 18, 2024) (holding that the defendant's appeal of a supervised-release condition did not fall within the statutory-maximum exception to his appeal waiver because his one-year term of supervised release was not more than the longest term he could receive); *United States v. Holtzer*, 32 F.4th 875, 882-86 (10th Cir. 2022) (holding that a similar waiver provision barred the defendant from challenging a supervised-release condition as exceeding the limits of Section 3583(d)); *Ferguson*, 669 F.3d at 766 (holding that the statutory-maximum exception to an

17

appeal waiver did not preserve the defendant's right to challenge a supervised-release condition on the ground that it constituted a greater deprivation of liberty than necessary in violation of Section 3583(d)); *United States v. Ballard*, 491 F. App'x 374, 376 (4th Cir. 2012) (holding that an appeal asserting an abuse of the district court's discretion under Section 3583(d) did not fall within any waiver exception for sentences exceeding the statutory maximum); *United States v. Sines*, 303 F.3d 793, 798 (7th Cir. 2002) (holding that the defendant's broad appeal waiver waived his right to challenge the supervised-release conditions and that he cannot circumvent that waiver); *United States v. Andis*, 333 F.3d 886, 894 (8th Cir. 2002) (en banc) (dismissing as barred by the appeal waiver an appeal challenging supervised-release conditions as purportedly violating Section 3583(d)'s requirements and holding that, unless the defendant disputes the knowing and voluntary nature of the waiver or argues that the conditions were based on "some constitutionally impermissible factor, such as race," "the conditions are not subject to review on appeal").

In sum, Hackney's appeal challenging the substantive reasonableness of two supervised-release conditions under Section 3583(d) does not fall within the statutory-maximum exception to his broad appeal waiver. As such, this Court should dismiss this appeal because Hackney waived his right to bring it.

18

**B.    Hackney's contention that "statutory maximum" means the requirements set out in Section 3583(d) fails.**

For his part, Hackney contends that the phrase "statutory maximum" means the parameters set by Section 3583(d)—such that a supervised-release condition exceeds the "statutory maximum" punishment if it (1) is not reasonably related to the factors set forth in Section 3553(a)(1), (a)(2)(B)–(D) (i.e., the nature and circumstances of the offense and the history and characteristics of the defendant, the need for the sentence to provide for adequate deterrence, to protect the public, and to provide for needed correctional treatment); (2) involves a greater deprivation of liberty than is reasonably necessary for the purposes set forth in Section 3553(a)(2)(B)–(D); or (3) is inconsistent with any pertinent policy statements issued by the Sentencing Commission.  (Brief at 11.)  But Hackney conflates two distinct concepts: a sentence that exceeds the limits of the law and a sentence that exceeds the statutory-maximum punishment.  *See United States v. Barnes*, 953 F.3d 383, 388-90 (5th Cir. 2020) (recognizing that an argument that a sentence is illegal or unconstitutional [i.e., that it exceeds the limits of statutory or constitutional law] is distinct from an argument that a sentence exceeds the statutory-maximum punishment); *see also Prestel*, 60 F.4th at 619 (rejecting the argument that "there is no real distinction between a sentence that exceeds the limits of the law and a sentence that exceeds the statutory maximum").

19

A sentence that exceeds the statutory-maximum punishment is a subset—a particular type—of a sentence that exceeds the limits of the law.  But as logically follows from this, not every sentence that exceeds the limits of the law is a sentence that exceeds the statutory maximum.  For example, a substantively unreasonable prison sentence exceeds the limits of the law—specifically, Section 3553(a)'s requirement that a court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing (such as deterrence and protection of the public)—but if the sentence falls below the maximum prison term set by the statute of conviction (for example, the 30-year maximum sentence set by 18 U.S.C. § 2251(a) and (e)), then it is not a sentence that exceeds the statutory-maximum punishment, and an appeal of it would be barred by a waiver provision like Hackney's.  *See Yiping Qu*, 618 F. App'x at 780 (noting that "[a]ppellate waivers foreclose challenges to many aspects of a sentence that may be unlawful, such as improper application of the sentencing enhancements or substantively unreasonable sentences"); *United States v. Ramirez*, 575 F. App'x 398, 2014 WL 3469487, at *1 (5th Cir. July 16, 2014) (holding that the appeal waiver barred the defendant's challenge to the substantive reasonableness of his sentence); *United States v. Jacobs*, 635 F.3d 778, 783 (5th Cir. 2011) (same).

In the same way, although a supervised-release condition may exceed the limits of the law—specifically, Section 3583(d)'s requirement that it involve no greater deprivation of liberty than is reasonably necessary for the purposes of affording adequate deterrence or protecting the public—that does not mean that it is a sentence that exceeds the statutory maximum. *See Yiping Qu*, 618 F. App'x at 780 ("The condition of supervised release that [the defendant] seeks to challenge, even if it is an unreasonable one [under Section 3583(d)], does not exceed a 'statutory maximum.'"); *Scallon*, 683 F.3d at 682-84 (holding that, based on a similar waiver provision with a statutory-maximum exception, the defendant "unequivocally waived" his right to appeal supervised-release conditions on the ground that they violated Section 3583(d)'s requirements); *see also Holzer*, 32 F.4th at 883 (holding that a supervised-release condition— even an unreasonable one—does not exceed a statutory maximum).

Hackney cites *United States v. Higgins*, 739 F.3d 733 (5th Cir. 2014), for the proposition that supervised-release conditions that violate Section 3583(d)'s parameters "constitute 'punishment in excess of the statutory maximum.'" (Brief at 12.) But *Higgins* stands for no such proposition. Rather, *Higgins* simply held that the defendant in that case had not advanced any argument that his appeal fell within the statutory-maximum exception. *See id.* at 739 (holding that the defendant's appeal was barred by the appeal waiver where he

21

"put[] forth no argument that [the issue he raised] violates [Section 3583(d)'s] limitations in a way that constitutes punishment in excess of the statutory maximum"). *Higgins* did not decide what would definitively fall within the statutory-maximum exception; it simply found that the defendant in that case had put forth no argument that his appeal did so.

Moreover, the fact that *Higgins* emphasized—not that the defendant put forth no argument that his sentence violated Section 3583(d)'s limitations, *period*—but that he put forth no argument that his sentence violated that statute's limitations "*in a way that constitutes a punishment in excess of the statutory maximum,*" *id.* (emphasis added), only underscores that *Higgins* did not hold that simply arguing that a supervised-release condition violates Section 3583(d)'s requirements would fall within the statutory-maximum exception.

This understanding of *Higgins* is also demonstrated by the fact that *Higgins* used language mirroring that used in *Andis*, where the en banc Eighth Circuit held that the appeal waiver barred the Court from reviewing whether the district court abused its discretion under Section 3583(d) by imposing certain supervised-release conditions and that the judicially recognized statutory-maximum exception did not save the appeal. *Compare Higgins*, 739 F.3d at 739 ("Although in addressing the statutory maximum in the imprisonment context we need consider only the length of time authorized by

22

statute, an appeal regarding the conditions of [supervised release] must be reviewed under 18 U.S.C. § 3583.") *with Andis*, 333 F.3d at 893 (noting that "[w]ere this appeal to address the length of [the defendant's] imprisonment, we would simply need to review the length of the time authorized by statute to determine whether . . . his appeal should be summarily dismissed based on his waiver," but, where the defendant appeals supervised-release conditions, the relevant statute is Section 3583(d), a statute that provides district court's with broad discretion, and holding that, where the defendant challenges neither the voluntariness of the waiver nor argues that the supervised-release conditions were based on some constitutionally impermissible factor, such as race, "the conditions are not subject to review on appeal").  In other words, just like the *Andis* decision it mirrored, *Higgins* did not hold that a supervised-release condition that violates Section 3583(d)'s requirements constitutes a sentence in excess of the statutory maximum; rather, it simply held that the defendant failed to show that the issue he raised—a conflict between the oral pronouncement of supervised-release conditions and the written judgment—constituted a sentence in excess of the statutory maximum

Indeed, this Court in *Yiping Qu* did not read *Higgins* as Hackney does— that is, as holding that whenever a defendant argues that the district court imposed supervised-release conditions in violation of Section 3583(d), he raises

23

an argument that fits within the statutory-maximum exception to an appeal waiver. To the contrary, *Yiping Qu* held that a claim that a supervised-release condition exceeds Section 3583(d)'s limits is not an appeal challenging "'a sentence imposed in excess of the statutory maximum.'" *See Yiping Qu*, 618 F. App'x at 779-80 (citing *Higgins* and holding that the defendant's claim that his supervised-release conditions were substantively unreasonable under Section 3583(d) was barred by the appeal waiver); *see also United States v. West*, No. 22-11001, Order Denying Rehearing En Banc, at 13, 17, 19-22 (Oldham, J., dissenting) (citing *Yiping Qu* approvingly).

In any event, even assuming for the sake of argument that *Higgins* stands for the proposition that Hackney claims—i.e., that whenever a defendant argues that a supervised-release condition violates Section 3583(d), his appeal falls within the statutory-maximum exception—*Higgins* would nonetheless conflict with *Scallon*, which held that just such an argument was barred by an appellate waiver with a statutory-maximum exception. *See Scallon*, 683 F.3d at 682-84. And under the rule of orderliness, *Scallon*, as the earlier panel decision, would control. *See Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008) ("It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening

change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court.").[8]

In short, Hackney's contention that the district court abused its discretion under Section 3583(d) by imposing two purportedly unreasonable supervised-release conditions does not fall within the statutory-maximum exception to his appeal waiver. Thus, this Court should dismiss this appeal without reaching the merits because Hackney waived his right to bring it.

> **2.     Even assuming Hackney did not waive his right to bring this appeal and this Court reaches the merits of his argument, Hackney fails to show that the district court plainly erred by imposing the complained-of conditions.**

> <u>**Standard of Review**</u>

Despite having had advance notice of the complained-of supervised-release conditions, which were listed in the PSR, (ROA.217-18), Hackney did not object to either condition, (ROA.164, 228-30.) Accordingly, as Hackney concedes, (Brief at 16), he failed to preserve error, and plain-error review applies. *See Ellis*, 720 F.3d at 224-25 ("To preserve error, an objection must be

---

[8] Hackney also cites two unpublished cases—*United States v. Ortiz*, 784 F. App'x 285 (5th Cir. 2019), and *United States v. Hartshorn*, 163 F. App'x 325 (5th Cir. 2006). (Brief at 12.) But neither case supports his contention. Indeed, *Ortiz* supports the government's position, as there, the Court held that the appellate waiver barred the defendant's challenge to a supervised-release condition. *Ortiz*, 784 F. App'x at 286-87. And in *Hartshorn*, the Court found that the defendant's appeal of a supervised-release condition fell outside the scope of the appeal waiver where (1) the parties agreed that the district court exceeded its authority and (2) the challenged supervised-release condition addressed an area over which the Bureau of Prisons has exclusive authority—circumstances not present here. *Hartshorn*, 163 F. App'x at 329-30.

sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction."); *United States v. Mendoza-Velasquez*, 847 F.3d 209, 212 (5th Cir. 2017) (reviewing supervised-release condition for plain error where the defendant did not object to the condition below).

Under that standard, Hackney must show (1) an error, (2) that was clear or obvious, rather than subject to reasonable dispute, (3) that affected his substantial rights, and (4) that has a serious effect on the fairness, integrity, or public reputation of judicial proceedings. *Ellis*, 720 F.3d at 225; *see also Puckett v. United States*, 556 U.S. 129, 135 (2009). "Meeting all four prongs is difficult, as it should be." *Puckett*, 556 U.S. at 135 (internal citation omitted).

**Discussion**

A district court has wide discretion in imposing conditions of supervised release. *United States v. Paul*, 274 F.3d 155, 164 (5th Cir. 2001). However, this discretion is limited by 18 U.S.C. § 3583(d), which provides that a court may impose special supervised-release conditions only when they meet certain criteria. *Id.* First, the conditions must be reasonably related to the factors set forth in Section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D). *See* 18 U.S.C. § 3583(d)(1). These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to

afford adequate deterrence to criminal conduct; (3) the need to protect the public from further crimes of the defendant; and (4) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. §§ 3553(a)(1), (a)(2)(B)–(D). Second, the conditions cannot involve a greater deprivation of liberty than is reasonably necessary to achieve the latter three statutory goals. *See* 18 U.S.C. § 3583(d)(2). Finally, the conditions must be consistent with any pertinent policy statements issued by the Sentencing Commission. 18 U.S.C. § 3583(d)(3).

### A. The district court did not plainly abuse its discretion by imposing a condition providing that Hackney shall have no contact with minors.

Under this Court's precedent and the record in this case, the district court did not err—let alone clearly or obviously err—by imposing a supervised-release condition prohibiting Hackney from having contact with minors.

The complained-of condition, in full, provided that Hackney shall:

> have no contact with minors under the age of 18, including by correspondence, telephone, internet, electronic communication, or communication through third parties. The defendant shall not have access to or loiter near school grounds, parks, arcades, playgrounds, amusement parks or other places where children may frequently congregate, except as may be allowed upon advance approval by the probation officer[.]

(ROA.70-71.)

27

Hackney argues that this condition is substantively unreasonable under Section 3583(d)(2) because it purportedly involves a "greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B) [deterrence], (a)(2)(C) [protect the public], and (a)(2)(D) [provide the defendant with needed training, medical care, or correctional treatment]." (Brief at 17); 18 U.S.C. § 3583(d)(2). Specifically, Hackney contends that a less restrictive alternative is possible—i.e., one that allows for contact with minors "upon probation officer approval"—and that "the reasonable necessity" of a condition that does not allow for contact with minors upon probation officer approval is not "evident from the record." (Brief at 20.) But he is wrong. Under this Court's precedent in *Ellis*, the imposed condition does not involve a greater deprivation of liberty than is reasonably necessary for the purposes of deterrence and protection of the public, and, contrary to Hackney's assertions, the record amply supports it.

In *Ellis*, this Court affirmed a similarly worded supervised-release condition— which, unlike Hackney's shorter, 15-year condition here— extended for the life of the defendant. Specifically, where the defendant had pleaded guilty to possession of child pornography and there was evidence that he had molested several children in the past, the *Ellis* Court held that a supervised-release condition—which provided that the defendant shall "have

28

no contact with persons under the age of 18, including by correspondence, telephone, internet, electronic communication, or through third parties"—did not involve a greater deprivation of liberty than necessary. 720 F.3d at 225-26. Notably, the Court made this ruling even though the ban was "for life" and did "not contain an exception for permitted contact" because, as the Court reasoned, the condition—by referencing activities such as correspondence and telephone and electronic communication—focused the ban on ways in which the defendant "could initiate and carry on regular contact with children" and a later condition made clear that the defendant could request permission from his probation officer for "incidental contact" should the need arise. *Id.* at 226 (emphasis added).

Here, just as in *Ellis*, the complained-of condition—by referencing activities such as correspondence and telephone and electronic communication, (ROA.70-71)—focused the ban on ways in which Hackney "could initiate and carry on *regular* contact with children," and, through a later condition (regarding access to places frequented by children), made clear that Hackney could request permission from his probation officer for casual and incidental contact should the need arise. *See Ellis*, 720 F.3d at 226. Thus, just as in *Ellis*, the complained-of condition here does not involve a greater

29

deprivation of liberty than reasonably necessary, and it is not substantively unreasonable.

Indeed, this is especially true considering that: (1) the condition here is even more limited than that in *Ellis*, as, in contrast to the condition in *Ellis*, which extended for the defendant's lifetime, the condition here extends for only 15 years, and (2) the condition is even more supported by the record here than in *Ellis*, as—given that Hackney pled guilty to production, not possession, of child pornography; sexually abused children more recently than the defendant in *Ellis*; and sexually abused children of a wider swath of ages, from the very young (around five years' old, (ROA.229-30)) to tweens to teenagers, (ROA.202-04)—Hackney arguably poses an even greater danger to children than the defendant did in *Ellis*.

In short, because *Ellis* affirmed a supervised-release condition of similar scope and of longer duration than the condition imposed here, and because the evidence supporting the condition here is even stronger than that in *Ellis*, Hackney cannot show that the district court erred—let alone clearly or obviously—by imposing the complained-of condition.

Hackney argues otherwise, pointing to *United States v. Duke*, 788 F.3d 392 (5th Cir. 2015). But that case is distinguishable. There, the district court imposed a lifetime supervised-release condition providing that the defendant

"shall not have contact with anyone under the age of 18," period. *Id.* at 401.[9]

Thus, unlike *Ellis* and unlike here, the condition in *Duke* was not limited in scope by an illustrative list of prohibited activities and a subsequent provision for incidental contact with the probation officer's permission that, together, focused the condition on prohibiting the initiation and carrying on of regular contact with children. Further, unlike in *Ellis* and unlike here, the defendant in *Duke* did not have a history of direct sexual abuse of a child. *Id.* at 403. Thus, this case is readily distinguished from *Duke* and much more like *Ellis*—where this Court affirmed the no-contact condition, concluding that it struck the right balance between protecting the public and respecting the defendant's limited interest in associating with minors.

Indeed, in many ways, this is a much easier case to affirm than *Ellis.* The condition here, in addition to being of a more limited duration than the one in *Ellis*, is supported by ample evidence demonstrating that the particular modification Hackney seeks—i.e., a provision that would effectively allow him to initiate and carry on regular contact with children upon the probation officer's permission—would not adequately protect children from his future potential abuse. The record shows that Hackney sought a relationship with a

---

[9] *See also* Judgment (Dkt. 32), *United States v. Duke*, 2:13-CR-297 (W.D. La. Filed June 2, 2014).

mother of young children who instructed her children not to say anything about Hackney's abuse and who was even in the room when some of the abuse occurred. (ROA.198, 202-03.) Hackney also hid cameras around his house, which he used to produce child sexual abuse material and nude images of children without their knowledge. (ROA.195, 197, 202-04.) And one child stated that Hackney raped her after she had involuntarily consumed a drug. (ROA.203.) Thus, given Hackney's (1) history of inducing and/or manipulating a mother and her young children to protect him by staying silent about his abuse, and (2) history of violating and abusing children while they were sleeping, drugged, or otherwise unaware of the violation, the district court quite reasonably concluded that a probation officer most likely would not have all of the information needed to make a wise decision about whether to allow Hackney to have non-incidental contact with a child. As such, allowing regular, non-incidental contact with the probation officer's permission would not adequately protect children, and the district court did not abuse its wide discretion—let alone clearly or obviously abuse its discretion—by concluding that the imposed condition involved no greater deprivation of liberty than reasonably necessary to protect children from Hackney's potential abuse.[10]

---

[10] This is also especially true considering Hackney's weak purported interest in freely associating with minors. Hackney's children will not be minors when he is released from prison. (ROA.208.) And he currently has no grandchildren, so any argument that the condition is unduly restrictive based on that ground is not ripe for review. *See United States*

32

In sum, Hackney fails to show any error, let alone clear or obvious error, in the district court's no-contact condition.

**B.      The district court did not plainly abuse its discretion by imposing a condition requiring Hackney to provide the probation officer with access to his financial information.**

Based on this Court's caselaw and the record, the district court did not err—let alone clearly or obviously err—by imposing a supervised-release condition requiring Hackney to provide the probation officer with access to his financial information.

The complained-of condition provides that Hackney shall "provide to the probation officer complete access to all business and personal financial information[.]" (ROA.71.)  The Sentencing Commission recommends such a condition "[i]f the court imposes an order of restitution, forfeiture, or notice to victims, or orders the defendant to pay a fine," USSG § 5D1.3(d)(3).  But the Commission also recognizes that the condition "may otherwise be appropriate in particular cases," depending on the facts of the case.  USSG § 5D1.3(d).

---

*v. Magana*, 837 F.3d 457, 459 (5th Cir. 2016) ("A claim is not ripe for review if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.").  Moreover, in the future, if Hackney's grown children have children, and if they want Hackney to have contact with their children, Hackney can always move the district court for a modification of the condition on those grounds.  *See* 18 U.S.C. § 3583(e)(2).  In sum, Hackney provides no good reason for why he—a man who will be in his 60s when he is released, who will have no minor children and currently has no grandchildren, and who has an extremely disturbing history of sexually abusing children—has any legitimate interest in initiating and carrying out regular contact with children that outweighs the weight and importance of protecting children from his potential future abuse.

Hackney contends that this condition is plainly unreasonable because it violates Section 3583(d)'s requirement that the condition be "reasonably related" to the nature and circumstances of the offense and the history and characteristics of the defendant and be "consistent with any pertinent policy statements issued by the Sentencing Commission."  18 U.S.C. § 3583(d)(1), (3).  Specifically, he contends that the "presumed justification" for the condition—i.e. the Sentencing Commission's recommendation under USSG § 5D1.3(d)(3)—"never came to fruition" because the district court never ordered restitution.  (Brief at 23.)  Moreover, he contends, the particular circumstances of this case do not warrant the condition because his "instant offense was not a financial crime, his criminal history reflects no convictions for fraud, and he earned his livelihood by working the majority of his adult life."  (Brief at 24.)  But he ignores the facts in the record supporting the condition.

First, this Court has affirmed a similar financial-information condition where, as here, the district court ordered the defendant to contribute to the costs of his court-ordered treatment services.  In *United States v. Cox*, this Court affirmed a supervised-release condition requiring the defendant to provide his financial information to the probation officer where the record indicated that the condition was "reasonably related to the requirement that he pay for drug

treatment and testing and mental health treatment." 672 F. App'x 517, 519 (5th Cir. 2017). Here, the district court ordered Hackney to contribute to the costs of his court-ordered sex-offender treatment and drug-dependency treatment. (ROA.72.) Thus, as in *Cox,* here the record shows a reasonable relationship between the financial-information condition and the sentencing goals of Section 3553(a), including the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to provide correctional treatment. *See id.*

Second, the record shows that Hackney possessed child pornography that he himself did not produce, and Hackney indicated that, on at least one occasion, he purchased child pornography from the dark web using the cryptocurrency Bitcoin. (ROA.196, 197 (noting that Hackney possessed 40 files of child sexual abuse material depicting toddlers that he did not produce).) As such, the financial-information condition will help monitor if, in the future, Hackey tries again to purchase child pornography. *See United States v. Vega*, No. 13-40681, 2014 WL 10937081, at *2 (5th Cir. Sept. 15, 2014) (holding that the supervised-release condition allowing the probation officer to access the defendant's financial information will help the officer detect any return to the defendant's former lifestyle of drug distribution). Consequently, for this

35

additional reason, the record shows a reasonable relationship between the financial-information condition and the sentencing goals of Section 3553(a).

In sum, Hackney cites no caselaw holding that the district court plainly erred in imposing a financial-information condition under analogous circumstances, and, under *Cox* and *Vega*, the district court properly imposed the condition. As such, Hackney cannot show that the district court abused its discretion—let alone that it clearly or obviously abused its discretion—by imposing the condition.

## C.   In any event, Hackney fails to satisfy the fourth prong.

Even assuming Hackney could show clear or obvious error in the district court's imposition of the no-contact and financial-information conditions (and he cannot), he cannot satisfy the fourth prong of plain-error review.

By statute, Hackney can ask the district court to modify the complained-of conditions at any time prior to the expiration of the supervised-release term, *see* 18 U.S.C. § 3583(e), and, as this Court has held, this modifiable nature of supervised-release conditions "weighs heavily in [the Court's] consideration of the fourth prong." *United States v. Prieto*, 801 F.3d 547, 554 (5th Cir. 2015). Because "a modifiable condition works a less significant deprivation of liberty than one which cannot be altered," "a defendant faces an uphill battle when he

seeks to convince [this Court] that a modifiable condition 'seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.*

Here, as discussed above, the complained-of conditions were, at the very least, arguably related to the statutory factors and supported by the caselaw. The complained-of conditions also came as little surprise to Hackney, as the PSR recommended them, (ROA.217-18), and Hackney forewent not one but two opportunities to object to them (both in his responses to the PSR and at the sentencing hearing). Given this and given Hackney's conviction for production of child pornography; his history of sexually abusing multiple children (including when the child was asleep or incapacitated); and his demonstrated ability to induce or manipulate his victims into silence, Hackney cannot show that this Court's failure to reverse a modifiable supervised-release condition prohibiting him from contacting minors seriously impugns the fairness, integrity, or public reputation of judicial proceedings. Similarly, given Hackney's court-ordered obligation to contribute to the costs of his treatment services and his admitted past purchase of child pornography, Hackney cannot show that the public would perceive any serious injustice in this Court's failure to correct a modifiable condition requiring him to provide financial information to the probation officer.

37

## CONCLUSION

This Court should dismiss this appeal as waived or, alternatively, affirm the judgment.

Respectfully submitted,

Nancy Larson
Acting United States Attorney

*/s/ Gail Hayworth*
Gail Hayworth
Assistant United States Attorney
Texas Bar No. 24074382
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: (214) 659-8600
gail.hayworth@usdoj.gov

Attorneys for Appellee

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 8,576 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Calisto MT font.

*/s/ Gail Hayworth*
Gail Hayworth
Date: October 27, 2025

38